**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

TYRONE CHALMERS,

     Petitioner,

vs.                 No. 2:09-cv-2051-MSN-atc

TONY MAYS, Warden,
Riverbend Maximum Security
Institution,

     Respondent.

**ORDER DENYING THIRD MOTION FOR DISCOVERY
DENYING MOTION FOR JUDICIAL NOTICE
AND
DENYING LEAVE TO REQUEST ADDITIONAL DISCOVERY AT A LATER DATE**

On May 20, 2020, Petitioner Tyrone Chalmers, a death-sentenced inmate incarcerated at Riverbend Maximum Security Institution, filed through counsel his Third Motion for Discovery (ECF No. 112) and a supporting memorandum.  (ECF No. 113.)  On September 17, 2020, Respondent Tony Mays filed a Response in Opposition to Petitioner's Third Motion for Discovery. (ECF No. 121.) On October 16, 2020, Petitioner filed a Reply to Warden's Response to Petitioner's Third Motion for Discovery.  (ECF No. 122.)  For the reasons stated below, the Third Motion for Discovery is **DENIED**.

In the body of Chalmers' Third Motion for Discovery, he moves the Court to take judicial notice of documents from the *Dellinger* case[1] about the performance of Chalmers' post-conviction counsel Catherine Brockenborough and Don Dawson.  (ECF No. 113 at PageID 5524.)  Chalmers requests leave to conduct additional discovery at a later time because of limitations on his ability to investigate caused by the COVID-19 pandemic.  (ECF No. 113 at PageID.)  For the reasons stated below, these motions are **DENIED**.

---

[1] *See Dellinger v. Mays*, No. 3:09-404-TAV-CCS, 2015 U.S. Dist. LEXIS 161736 (E.D. Tenn. Jan. 30, 2015).

I.       BACKGROUND

In 1997, Chalmers was convicted on one count of first-degree felony murder for the death of Randy Allen in the early morning hours of August 20, 1994, and one count of especially aggravated robbery of Allen for which Chalmers received a twenty-year sentence. *See Chalmers v. State*, No. W2006-00424-CCA-R3-PD, 2008 WL 2521224, at *1–2 (Tenn. Crim. App. June 25, 2008). He was sentenced to death on the felony murder conviction based on an aggravating circumstance that he had been previously convicted of one or more violent felonies. *Id.* at *1.

### A. The Hunter Case

The prior violent felony conviction was for the attempted especially aggravated robbery and attempted first degree murder of Joseph Hunter, that occurred on the same morning as Allen's murder. *Id.* at *2. Chalmers pled guilty to the charges related to Hunter, and on cross-examination during the sentencing phase of the Allen trial, Chalmers admitted that he tried to rob Hunter that morning before he met with Andre ("Dre") Ragland and Andrew ("Black") Wilkins. *Id.* at *2–4. In the post-conviction proceedings, Chalmers' attorney in both the Allen and Hunter cases, Linda Kendall-Garner, testified that Chalmers never denied his involvement in the Hunter shooting and wanted to enter a guilty plea. *Id.* at *4. Kendall-Garner discussed the impact of the guilty plea on the pending murder case with Chalmers and informed him that the conviction in the Hunter case would become an aggravator making him death eligible in the Allen case. *Id.* Despite this information, Chalmers still chose to plead guilty in the Hunter case on the first day of trial.[2] *Id.*

At the sentencing hearing in the Hunter case, Chalmers claimed that he was on drugs, admitted that he "hurt Mr. Hunter a lot," and understood that "I almost took a man's life." (*See*

_____

[2] (Civ. No. 12-02444, ECF No. 24-2 at PageID 768–74, 776; *see id.*, ECF No. 24-3.)

2

*Chalmers v. Westbrook*, Civ. No. 2:12-cv-02444-SHL-dkv (ECF No. 13-3 at PageID 181–82).) He appealed his sentence in the Hunter case and was denied relief. *See State v. Chalmers*, No. 02C01-9703-CR-00109, 1999 WL 134512 (Tenn. Crim. App. Mar. 9, 1999). Chalmers was also denied post-conviction relief. *See Chalmers v. State*, No. W2003-02759-CCA-R3-PC, 2005 WL 1249072 (Tenn. Crim. App. May 23, 2005).

Chalmers challenged the conviction in the Hunter case by filing a petition under 28 U.S.C. § 2254 in this Court. (Civ. No. 12-02444-SHL-dkv, ECF No. 1.) Chalmers asserted actual innocence to overcome the procedural default of certain claims. (*See* ECF No. 71 at PageID 1346.) The Court opined that "[t]he centerpiece of Chalmers' claim of actual innocence" was the declaration of a purported eyewitness ("Eyewitness #1") who claims that Black was the one who shot at Hunter's vehicle. (Civ. No. 12-02444, ECF No 71 at PageID 1350; *see* ECF No. 16-1 & 56-1.) The Court noted that Eyewitness #1 did not express a willingness to testify at trial, and there is "reason to doubt that he would have testified" because Eyewitness #1 continues to conceal his identity. (ECF No. 71 at PageID 1360 n.26.)

The Court found "reasons to doubt the value of this newly discovered witness. (*Id.* at PageID 1360–61.) Eyewitness #1 identified Ragland as present during the Hunter shooting, but Hunter did not identify Ragland, and Ragland denied his involvement even after his exoneration. (*Id.*) The Court found Eyewitness #1 contradicted Chalmers' statement to the police about the Allen murder. (*Id.* at PageID 1361.) Specifically, Chalmers stated that he first met Black "when Dre and him picked me up." (*Id.*) The Court opined that, if that were the case, Black was not with Chalmers before or during the Hunter shooting. (*Id.*)

The Court found that the evidence of actual innocence, largely based on discrepancies in descriptions of the shooter, was insufficient especially given Chalmers' plea and admissions and Hunter's identification of Chalmers. (*Id.* at PageID 1346–65.) The Court found that that Chalmers' "own words sink his argument." (*Id.* at PageID 1365.) On March 29, 2016, the Court denied the petition. (ECF No. 71.) Chalmers did not appeal.

## B. Discovery Granted About the Allen Murder

The Court has previously granted Chalmers discovery for the instant habeas petition about the Allen murder. On January 4, 2011, in ruling on Chalmer's First Motion for Discovery, the Court granted Chalmers the following discovery:

- the weapon used in the Allen homicide (Civ. No. 09-2051, ECF No. 34 at PageID 3335);

- all records and files from the Tennessee Bureau of Investigation ("TBI") and/or TBI laboratory, the Memphis Police Department ("MPD"), and the Shelby County Sheriff's Office ("SCSO") concerning the investigation of the Allen homicide and the Hunter shooting and the suspects believed to be involved (*id.* at PageID 3337–38);

- all records and files of the Federal Bureau of Investigations ("FBI"), MPD, SCSO, and TBI concerning Joseph Hunter (*id.* at PageID 3340);

- the district attorney's files on the Allen homicide (*id.* at PageID 3345);

- the district attorney's case files about the Hunter shooting (*id.*); and

- any and all records from the SCSO Special Operations Gang Unit, the MPD Gang Unit, or the Joint Gang Task Force about (1) the involvement of the Black Gangster Disciples or other gangs in the Allen homicide and/or the Hunter shooting; and (2) that demonstrate that Chalmers, Ragland, Hunter, and/or Murphy, were involved in gang activity connected to the Allen homicide and/or the Hunter shooting (*id.* at PageID 3348).

On June 14, 2011, Chalmers filed Petitioner's Second Motion for Discovery. (ECF No. 42.) Chalmers sought the oral depositions and production of documents from the following individuals:

4

- MPD Officers Dwight Woods, C.G. Gordon, and J.L. Nichols, officers who investigated the Hunter and/or Allen cases;

- Assistant District Attorney James Challen, the prosecutor in both the Allen and Hunter cases;

- Deputy District Attorney General John Campbell, the State's counsel in the Allen post-conviction proceedings;

- Sandra Truitt, the District Attorney's Chief Administrative Clerk;

- Jill Madajczyk, a Senior Assistant City Attorney for the City of Memphis who wrote the letter that accompanied the documents from the MPD about the Allen homicide and communicated that the production from the MPD was "everything that could be located."

(ECF No. 42 at PageID 3394; ECF No. 43 at PageID 3399–3400.)

> The Court granted Chalmers limited discovery from Truitt, including her deposition about DA's office policies and procedures related to maintenance, storage, transfer, and destruction of documents, files, and electronically stored information and the response to the subpoena. Further, Petitioner may seek the production of documents from Truitt limited to: (1) office policies about the production of documents, including work-product or privileged documents; (2) the DA's record-keeping policies, including but not limited to policies about the maintenance, transfer, destruction, and production of documents, files, and electronically stored information; (3) correspondence, memos, and other documents related to the production of documents in response to Petitioner's federal subpoena; and (4) the search of records conducted in response to the subpoena.

(ECF No. 59 at PageID 3645–46.)

The Court granted Chalmers the deposition of Challen and "the production of any and all documents in Challen's possession related to the investigation and/or prosecution of the Hunter assault and Allen homicide, including but not limited to information about Petitioner, 'Black,' Andre Ragland, and other suspects for these crimes." (*Id.* at PageID 3644.)

## II.        THIRD MOTION FOR DISCOVERY

After an extended stay of the habeas case, Chalmers filed the instant motion (his third

discovery motion) seeking the following discovery related to Chalmers' prior conviction for the

robbery and shooting of Hunter:

A.        (1) All records, files, or documents in the possession, custody or control of the Tennessee Bureau of Investigation (hereinafter, "T.B.I."), including each of its subdivisions no matter how denominated, concerning any investigation of Joseph Hunter any time prior to June 1997, including, but not limited to: (1) any investigation of Joseph Hunter as a suspect, victim, or defendant in any criminal or suspected criminal activity, (2) any statement to law enforcement or court testimony given by Joseph Hunter in the investigation or prosecution of any criminal matter and any favorable treatment he received as a result, and (3) any involvement or suspected involvement in the sale of narcotic substances, gang or gang-related activities, and/or any other illegal activities.

(2) An affidavit from TBI's records custodian or other similarly-qualified agency representative and employee, detailing the good-faith search methods utilized to determine whether it was in possession of the requested information, including, but not limited to, details regarding the databases searched and the search terms used;

B.        (1) All records and files of CrimeStoppers of Memphis and Shelby County, Inc., (hereinafter, "CrimeStoppers") documenting any report, tip, or other information from any source concerning the shooting of Joseph Hunter on August 20, 1994. Such information includes, but is not limited to: any and all files, rewards offered and/or given, documents, records, notes, logs, memos, records/recordings of telephone conversations, notations, writings, witness statements, reports, examinations, tape recordings, computer records of any sort, videotapes, and any other information of any sort (in whatever medium) concerning the shooting of Joseph Hunter (Memphis police incident number # 94-08-20-6993), including, but not limited to, the content of the tip; any and all information regarding the party or parties who: provided the tip, received the tip on behalf of CrimeStoppers, reported the tip to any law enforcement agency, or received the tip on behalf of any law enforcement agency; as well as the times, dates, and method(s) of communication with respect to each such individual communication; whether a reward was given for the information, and, if so, when and how much was rewarded; and any, other information and/or tips CrimeStoppers received regarding the Hunter shooting.

(2) Records Deposition or other equivalent process to ensure the production of all responsive documents, records, and materials;

C.      (1) Depositions of Sergeant R.D. Cummings, Officer Dwight Woods, and Officer J. Baker regarding their involvement in and/or knowledge regarding photo-packs and/or photo line-ups shown to Joseph Hunter during the investigation of his August 20, 1994 assault, to include, inter alia, any and all information regarding the officer(s) who: compiled each photo-pack or line-up shown to Mr. Hunter; were present and/or supervised Mr. Hunter's viewing of the same; the dates and locations of any and all occasions that Mr. Hunter viewed the photo-packs; the number of photos shown to Mr. Hunter on each occasion; the identities of the individuals whose photos were included in the photo-packs and/or line-ups shown to Mr. Hunter, and specifically, whether Mr. Chalmers photo shown to Mr. Hunter on one or more occasions; whether Mr. Hunter identified his attacker on one or more occasion, and if so, the name of the individual(s) identified.

(2) Subpoena duces tecum, requiring Sergeant Cummings, Officer Woods, and Officer Baker to bring their investigative files, records, notes, and any related documents or evidence to such depositions.

(*See* ECF No. 112 at PageID 5508–5510.)

Chalmers has withdrawn his request for a subpoena from the TBI because the TBI has agreed to conduct a search without a new subpoena.  (ECF No. 122 at PageID 5618 n.2.)  Therefore, the Court will not address Requests A (1 & 2).

## III.      RELEVANT CLAIMS

Chalmers seeks the above discovery to support certain claims concerning the Hunter shooting:

**A.7**  Mr. Chalmers' attorney failed to investigate the circumstances of the State's only aggravating factor, the Hunter assault (*see* ECF No. 12 at PageID 108-110);

**A.12**  Mr. Chalmers' attorneys failed to challenge his eligibility for execution on the ground that he did not commit the Hunter assault (*id.* at PageID 113-114.)

**C.4 & C.6**  Mr. Chalmers' attorneys failed to impeach Hunter's testimony in the penalty phase of Mr. Chalmer's trial (*id.* at PageID 142-145).

**C.5**  Mr. Chalmers' attorneys failed to move to exclude Joseph Hunter's testimony in the penalty phase of trial (*id.* at PageID 143)

**E.9**  The State withheld material, exculpatory information that Mr. Chalmers did not

commit the Hunter assault.  (*Id.* at PageID 152.)

(ECF No. 113 at PageID 5516.)

### A.  Ineffective Assistance of Counsel

Chalmers seeks to support five ineffective assistance of trial counsel claims (*see* Claims A.7, A.12, C.4, C.5, and C.6) with information obtained in discovery.  Chalmers argues that his counsel failed to investigate the circumstances that would have shown his innocence of the Hunter assault and ineligibility for the death sentence.  (*Id.*)  Chalmers contends that his counsel was ineffective at sentencing for his failure to impeach Hunter's testimony about the assault.  (*Id.*)

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To succeed on this claim, a movant must demonstrate two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense."  *Id.*

Respondent argues that the ineffective assistance claims are procedurally defaulted.  (ECF No. 19 at PageID 3192–94, 3204–06.)  Chalmers may overcome procedural default only by establishing cause and prejudice or actual innocence to obtain merits review by this Court.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Schlup v. Delo*, 513 U.S. 298, 320–321 (1995).

### B.  Withheld Evidence

Chalmers contends that the prosecution withheld exculpatory evidence that would have been material to the sentencing stage at the capital trial for Randy Allen's murder and exculpatory as to the Hunter shooting, the sole aggravating factor for the death penalty.  (ECF No. 113 at PageID

5516.)  Claim E.9 alleges a violation under *Brady v. Maryland*, 373 U.S. 83 (1963).

A *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–282 (1999).

Respondent asserts that the *Brady* claim at issue is procedurally defaulted.  (ECF No. 19 at PageID 3213–14.)

## IV.    STANDARD FOR HABEAS DISCOVERY

Habeas petitioners do not have an automatic right to discovery.  *See Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)).  Discovery in habeas cases is controlled by Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), which states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  *See Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) ("For good cause shown, the district court has the discretion to permit discovery in a habeas proceeding . . . .").  Habeas Rule 6 is meant to be "consistent" with the Supreme Court's decision in *Harris v. Nelson*, 394 U.S. 286 (1969).  *Bracy v. Gramley*, 520 U.S. 899, 909 (1997).  In *Harris*, the Court stated:

> [W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

*Harris*, 394 U.S. at 300.

"Good cause" is not demonstrated by "bald assertions" or "conclusory allegations."  *Stanford*, 266 F.3d at 460; *see also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004).  Rather,

the requested discovery must be materially related to claims raised in the habeas petition and likely to "resolve any factual disputes that could entitle [the petitioner] to relief." *Williams*, 380 F.3d at 975 (quoting *Stanford*, 266 F.3d at 460) (internal quotation marks omitted); *see Bracy*, 520 U.S. at 908–09 (allowing discovery relevant to "specific allegations" of fact in support of a claim of constitutional error); *Post v. Bradshaw*, 621 F.3d 406, 425 (6th Cir. 2010) (stating that discovery provides petitioner "that extra evidence he . . . needs to prove or strengthen his case"); *Braden v. Bagley*, No. 2:04-CV-842, 2007 WL 1026454, at *2 (S.D. Ohio Mar. 30, 2007) ("Rule 6's 'good cause' standard requires petitioner to at least attempt to identify what he expects to uncover through his discovery requests.").[3]  Although "more liberal discovery is appropriate in capital [habeas] cases," *Payne v. Bell*, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) (citing *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)), Rule 6(a) does not permit a "fishing expedition masquerading as discovery." *Stanford*, 266 F.3d at 460.

There is no clear entitlement to discovery for procedurally defaulted habeas claims. *See Williams,* 380 F.3d at 975–76 (finding no error in district court's denial of discovery on procedurally defaulted ineffective assistance of counsel claims); *Royal v. Taylor*, 188 F.3d 239, 249 (4th Cir. 1999) (finding no error in district court's denial of discovery on procedurally defaulted due process claims); *Calderon v. U.S. Dist. Court for the N. Dist. of Ca.*, 98 F.3d 1102, 1106 (9th Cir. 1996) (issuing mandamus to prevent discovery awarded by district court because petitioner had not filed a

---

[3] "The Sixth Circuit has not determined whether § 2254(e)(2) applies to motions for discovery." *Hill v. Anderson*, 4:96-CV-0795, 2010 WL 5178699, at *8 (N.D. Ohio Dec. 14, 2010). A petitioner may show good cause under Habeas Rule 6 without meeting the higher standard for an evidentiary hearing in 28 U.S.C. § 2254(e)(2). *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000); *see Braden*, 2007 WL 1026454, at *6 (distinguishing discovery from factual development under § 2254(e)(2)); *see also Simmons v. Simpson*, No. 3:07-CV-313-S, 2009 WL 4927679, at *5–6 (W.D. Ky. Feb. 12, 2009) (stating that this view is not unanimously held by all federal courts).

habeas petition with exhausted claims or sought such discovery in the state court); *Sherman v. McDaniel*, 333 F. Supp. 2d 960, 969–70 (D. Nev. 2004) (denying discovery on unexhausted claims because "[t]o do so would tend to undermine the exhaustion requirement, and the doctrine of federal-state comity on which it rests"). *But see Conway v. Houk,* No. 3:07-cv-345, 2009 WL 961199, at *3 (S.D. Ohio Apr. 8, 2009) ("So long as the procedural default defense has not been adjudicated, its pleading does not provide a basis to deny discovery."); *Hutton v. Mitchell*, No. 1:05-CV-2391, 2008 WL 4283318, at *2 (N.D. Ohio Sept. 16, 2008) (allegations of procedural default will not automatically bar discovery). However, "a habeas petitioner may use a Habeas Rule 6 discovery motion to obtain evidence relevant to excusing procedural default." *Payne*, 89 F. Supp. 2d at 974 (granting discovery motion in support of a presumptively defaulted claim because the motion sought to discover evidence which would allow the petitioner to obtain a factual basis to excuse default, his "actual innocence"); *see Braden*, 2007 WL 1026454, at *10 (granting the deposition of a mitigation specialist where the request was reasonably calculated to lead to evidence that could demonstrate a justification for excusing the apparent default of the petitioner's claim). Since procedural default may not automatically bar discovery in habeas cases, discovery may be allowed if it would uncover proof that could justify the apparent procedural default of Petitioner's claims.

## V.    ANALYSIS

Chalmers argues that the sole aggravating factor for his death sentence was the prior conviction for attempted especially aggravated robbery and attempted first degree murder where Hunter was the victim.  (ECF No. 113 at PageID 5515.)  He asserts that Hunter initially told police that the shooter weighed 130 pounds with a "skinny build."  (*Id.* at PageID 5516.)  Chalmers

11

contends that Hunter's description of the shooter changed to 127 pounds.  (*Id.*)[4]  Chalmers, at the time of his arrest nine days later on August 29, 1994, weighed 180 pounds.  (*Id.* at PageID 551, 617; *see* ECF No. 113-3 at PageID 5542.)

That same day, at approximately 9:00 a.m., Hunter called the police stating that the person who shot him and actually committed a murder was named "Dre" and was in jail from an arrest on August 27, 1994.  (ECF No. 113-4 at PageID 5544.)  Sergeant Gordon determined from the arrest records that Hunter may have been referring to Andre Ragland.  (*Id.*)  Hunter did not identify Ragland in a photo array.  (*Id.*)  However, that afternoon, Ragland confessed to the Allen murder stating that he committed it with Chalmers and "Black."  (*Id.*)  Chalmers was arrested that day.  (*Id.*)

Chalmers argues, based on Hunter's declaration, that Hunter was shown multiple photo packs and identified the man who shot him.  (ECF No. 113 at PageID 5517.)  Chalmers contends that the photo packs were not provided to his trial or post-conviction counsel, and the district attorney never asserted that Hunter identified Chalmers.  (*Id.*)  Chalmers asserts, based on the deposition of former prosecutor James Challen and the plea transcript in the Hunter case, that Chalmers was arrested for the Hunter shooting because of the MPD's investigative efforts and a CrimeStoppers tip.  (*Id.* at PageID 5518; *see* ECF No. 113-8; *see also* ECF No. 113-7 at PageID 5549–50.)  Chalmers claims that no information about the timing, detail, or nature of the tip has been provided to him.  (ECF No. 113 at PageID 5518.)

Chalmers relies on the Court's good cause findings for previous discovery requests.  (*Id.* at PageID 5518–19.)  He asserts that the Court previously found "unexplained discrepancies between

---

[4] The initial description was given on August 20, 1994, in the offense report and supplemental offense report.  (*See* ECF No. 113-1 at PageID 5538; *see* ECF No. 113-2 at PageID 5539.)

the police report and Hunter's statement about the identification of Hunter's shooter" and that the files Chalmers has received are incomplete because they did not contain the photo-lineup. (*Id.*) Chalmers notes that the Court has found good cause for law enforcement and prosecution files on the Hunter shooting. (*Id.* at PageID 5519–20.)

### A. CrimeStoppers of Memphis and Shelby County (Request B)

Chalmers seeks discovery of any and all records from CrimeStoppers of Memphis and Shelby County, Inc. about the shooting of Joseph Hunter. (ECF No. 113 at PageID 5530–31.) Chalmers contends that, according to prosecutor James Challen, Chalmers became a suspect in the Hunter shooting because of a CrimeStoppers tip. (*Id.* at PageID 5531.) However, Challen had no information about what records existed about the tip and noted that the prosecution did not put witnesses on that gave information to CrimeStoppers. (*Id.*; *see* ECF No. 113-8 at PageID 5553–55.)

Chalmers asserts that the Court's prior order granting discovery from the MPD referenced "CrimeStoppers information about the Hunter shooting" as a document Chalmers claimed was withheld by the State. (ECF No. 113 at PageID 5531; *see* ECF No. 34 at PageID 3336.) The Court granted discovery of all records and files from the TBI and/or TBI laboratory, the MPD , and the Shelby County Sherriff's Office concerning the investigation of the Allen homicide and the Hunter shooting and the suspects believed to be involved. (ECF No. 34 at PageID 3337–38.) This discovery was granted to resolve factual disputes about whether material evidence had been withheld and whether Chalmer's *Brady* claims were procedurally defaulted. (*Id.* at PageID 3337.) The Court mentioned CrimeStoppers information because Chalmers claimed that it had been withheld. (*Id.* at PageID 3336.) The Court did not specifically order the production of CrimeStoppers information beyond what was available in the law enforcement records. (*See id.* at PageID 3337–38.)

Chalmers contends that the MPD's response to the subpoena did not include any reference to the CrimeStoppers tip or any information about the timing, identity or nature of the tip.  (ECF No. 113 at PageID 5531.)  Further, he notes that the MPD no longer has files about the Hunter shooting and the District Attorney's file does not have that information.  (*Id.* at PageID 5531 n.8.)  Chalmers asserts that, to date, he has not received information about the tip that "commenced the investigation into the crime that is the sole reason he has been sentenced to death."  (*Id.* at PageID 5531–32.)

Respondent argues that the motion should be denied because it is an impermissible fishing expedition for material that does not support further factual development of Chalmers' claims.  (ECF No. 121 at PageID 5594.)  Respondent notes that the Court granted discovery of Crimestoppers information on January 4, 2011.  (*Id.* at PageID 5605.)  The MPD responded to the earlier subpoena, but the files did not reference the Crimestoppers tip.  (*Id.*)  The Court then allowed Challen's deposition because of missing or incomplete files.  (*Id.*)  Respondent contends that this request is a procedural abuse of discovery because Chalmers has had ample time, almost a decade, to follow-up on previous discovery, but he chose not to do so.  (*Id.*)

Respondent argues that the discovery requested is unlikely to prove or strengthen Chalmers' *Brady* and ineffective assistance of trial counsel claims.  (*Id.*)  Respondent argues that Chalmers is relying on an argument of actual innocence for the Hunter shooting to cast doubt on Chalmers' trial counsel's performance at sentencing in the Allen case.  (*Id.* at PageID 5605–06.)  However, Respondent argues that Chalmers' guilt was never in doubt because of his plea against trial counsel's advice and strong opposition, his testimony at the Allen sentencing, and Hunter's testimony.  (*Id.* at PageID 5606.)  Respondent asserts that further factual investigation is not necessary where the record refutes the allegations about his innocence.  (*Id.*)  Respondent contends that the request for

14

CrimeStoppers information is a fishing expedition based on conclusory and incredible allegations of prosecutorial misconduct and ineffective assistance of counsel. (*Id*.)

In reply, Chalmers argues that the Court has already found good cause for discovery of the information he now seeks, and he merely asks to look in new places. (ECF No. 122 at PageID 5617.) He asserts that the CrimeStoppers information, which should have been in the police file had it not been destroyed or lost, may be maintained by CrimeStoppers which remains as a functioning non-profit corporation in Memphis. (*Id.* at PageID 5618.) Chalmers asserts that Respondent has not disputed that *Brady* evidence was withheld, that trial counsel failed to investigate the Hunter shooting, or that Chalmers is intellectually disabled or the intersection of these errors, which Chalmers contends facilitated his wrongful conviction. (*Id.* at PageID 5619.) Chalmers argues that probable cause for his arrest in the Hunter shooting was unclear because of Sergeant Gordon's comments that he received information that Chalmers and Dre were responsible for several robberies and Challen's announcement that the arrest came from a CrimeStoppers' tip without any further investigation by trial counsel. (*Id.* at PageID 5619–20.) Chalmers contends that the CrimeStoppers information could support his ineffective assistance claim as well as his *Brady* claim. (*Id.* at PageID 5620.)

Chalmers has twice admitted to shooting Hunter, first in his plea and then at sentencing in the Allen case. Chalmers has unsuccessfully challenged his conviction for the Hunter shooting in both the state appellate courts and this federal court. In 2011, when the Court granted discovery from the MPD, Chalmers had not yet sought federal habeas review for the Hunter conviction. The same circumstances do not present itself with the present discovery request. Here, there is no factual dispute about the validity of Chalmers' conviction in the Hunter case and no basis to find prejudice

for counsel's failure to further investigate the crime where Chalmers has admitted his involvement and exhausted his appeals in state court and sought and been denied habeas relief.  In this case, the existence of a tip about Chalmers' involvement in the Hunter shooting, or lack thereof, does not bear on any factual dispute in this case.[5]  Chalmers has not demonstrated good cause for discovery of information from CrimeStoppers.  Request B is **DENIED**.

### B.  Officers Depositions & Documents (Request C)

Chalmers requests the depositions of MPD Sergeant R.D. Cummings, Officer Dwight Woods, and Officer J. Baker about photo packs and photo line-ups shown to Hunter for identification of the perpetrator and the production of the investigative files, records, and notes about the Hunter investigation.  (ECF No. 113 at PageID 5533–34.)  Chalmers contends that, because the Hunter file is now missing and Hunter declared that he identified his shooter from a photo (*see* ECF No. 113-6),[6] Chalmers should be granted this discovery to determine whether his picture was in a photo pack or lineup and whether Hunter identified Chalmers or someone else as the shooter.  (ECF No. 113 at PageID 5534.)  Chalmers asserts that these three MPD officers were involved in the investigation and may possess the relevant information.  (*Id.*)  Chalmers asserts that he cannot obtain exculpatory evidence except from the officers themselves.  (*Id.* at PageID 5534–35.)

Respondent argues that depositions about photographic identification did not undercut Chalmers' "'solemn declaration' and identification of himself as the shooter in open court."  (ECF No. 121 at PageID 5607.)  Respondent asserts that the guilty plea establishes the immateriality of the evidence for the *Brady* claim.  (*Id.*)  Respondent contends that, given trial counsel's representation in

---

[5] CrimeStoppers facilitates anonymous tips, limiting the ability to further investigate.  *See* CrimeStoppers of Memphis and Shelby County, Inc., http://crimestopmem.org/tips/ (last accessed Feb. 28, 2022).

both cases, Hunter has not shown how counsel could have attacked the plea and Hunter's testimony at the capital sentence.  (*Id.*)  Respondent suggests that the Court should not allow Chalmers "to continue fishing for information from these officers about a criminal offense to which [he] repeatedly confessed and about which Hunter gave sworn testimony identifying Petitioner as the perpetrator."  (*Id.*)

Chalmers asserts that Respondent seeks to retroactively relieve the state of its constitutionally required duty to provide *Brady* material.  (ECF No. 122 at PageID 5621.)  Chalmers argues that the fact that he pled guilty without this information does not change that the information is material and relevant to the Hunter offense and the sentencing in the Allen case.  (*Id.* at PageID 5622.)  Chalmers contends that his trial counsel did not pay much attention to the Hunter case until shortly before the plea.  (*Id.* at PageID 5622–23.)  Respondent asserts that the evidence is material because it could establish residual doubt about the Hunter conviction and have had a mitigating effect at sentencing.  (*Id.* at PageID 5623.)  Chalmers argues that:

> Had the state provided the constitutionally mandated *Brady* disclosures, counsel would have discovered the eyewitness who unequivocally maintains that Mr. Chalmers did not commit the crime or could have undermined Hunter's identification with proof that he identified someone else and/or failed to identify Mr. Chalmers from a photo pack given the opportunity to do so.

(*Id.* at PageID 5624.)

To succeed on a *Brady* claim, Chalmers must prove that the purportedly withheld information is favorable to his defense because it is either exculpatory or impeaching and that he was prejudiced by the failure to disclose it.  Chalmers has not established that exculpatory or impeaching evidence was withheld, and thus has not established a duty for the prosecution to disclose the photo

---

[6] The declaration has no date.  (*See* ECF No. 113-6.)

packs.  Further, Chalmers cannot show prejudice or that such evidence would be material where he has admitted to the crime and Hunter has identified him.  Chalmers has not established good cause for discovery from the MPD officers who investigated the Hunter case.  Request C is **DENIED**.

Chalmers' Third Motion for Discovery is **DENIED** as to all requests.

## VI.       Judicial Notice

Chalmers requests judicial notice of evidence and orders in another case involving his post-conviction counsel to support his future argument of ineffective assistance of post-conviction counsel.  (ECF No. 113 at PageID 5523.)  His counsel argues that, despite limitations placed on the ability to conduct a factual investigation during the COVID pandemic, he has established the timeline of Chalmers' post-conviction counsel's representation as the same period as that of the same lawyer's work in *Dellinger v. Mays*.  2015 U.S. Dist. LEXIS 161736.[7]  (*Id.* at PageID 5524.)  Chalmers asserts that there are significant relevant facts about post-conviction counsel's deficiencies and issues they face during the period when they represented Chalmers.  (*Id.*)

Chalmers notes that the *Dellinger* court found that Dawson and Brockenborough abandoned Dellinger's case and then made efforts to conceal their failures.  (*Id.*)  Chalmers' counsel notes that Brockenborough suffered from a mental illness that was misdiagnosed from 2001 through 2007, including a "full-blown mental illness event in December 2006" that preceded her termination.  (*Id.* at PageID 5524–25.)  Chalmers asserts that Brockenborough's illness caused her to have limited insight, self-deception, and a desire to please people that made her a poor judge of her own productivity.  (*Id.* at PageID 5525.)  Chalmers quotes that magistrate judge in *Dellinger* about Brockenborough's performance:

---

[7] Chalmers' cite to *Dellinger* as Case No. 04-404 is incorrect.

It goes without saying that Ms. Brockenborough's handling of Petitioner's case while severely mentally impaired, as well as Mr. Dawson's failure to supervise her or inform Petitioner of her limitations, was egregious and unprofessional. While neither Mr. Dawson or Ms. Brockenborough were able to recall the specific date she attempted to calculate the deadline to file Petitioner's federal habeas petition, the testimony of Dr. Sparks-Bushnell and Julia Tate clearly establish that Ms. Brockenborough was falling apart psychologically and professionally during the time period she could have possible calculated or filed Petitioner's federal habeas petition These uncontradicted facts lead the Court to conclude that Ms. Brockenborough's mental illness was indeed the cause of her failure to file Petitioner's federal habeas petition in a timely manner. This certainly constitutes the extraordinary circumstance required for equitable tolling.

(*Id.*) Dawson is described as having a cavalier attitude and demonstrating "more than mere negligence" in his approach to the representation and management of the office. (*Id.*)

Chalmers asks the Court to take judicial notice under Federal Rule of Evidence 201 of the following items in the record of the *Dellinger* case:

1. The report and recommendation (D.E. 83);

2. the district court order adopting the report and recommendation in whole (D.E. 94);

3. the transcript of the April 2014 evidentiary hearing (D.E. 77-78);

4. the depositions and declarations submitted in advance of the evidentiary hearing that further detail Brockenborough's mental illness from at least 2001 through 2007, as well as Dawson's egregious and unprofessional representation (*see, e.g.*, D.E. 19, 20, 20-6, 29-5, 29-17, 37-1).

(ECF No. 113 at PageID 5525–26.) Chalmers contends that this evidence of his post-conviction counsel's deficiencies during the relevant period of representation is relevant to his procedural default arguments under *Martinez v. Ryan*, 566 U.S. 1 (2012). (ECF No. 113. at PageID 5526.)

Respondent asserts that the motion for the Court to take judicial notice of documents from a separate case to the extent that it requests the Court to take notice of the truth of facts in those documents should be denied. (ECF No. 121 at PageID 5608.) Respondent argues that the key to

obtaining judicial notice is indisputability because taking judicial notice precludes a party from presenting contrary evidence. (*Id.* at PageID 5608–09.) Respondent argues that it is inappropriate to judicially notice facts from other proceedings for the purpose of establishing the truth of those facts, in part because the facts and issues raised in each case are unique to that case. (*Id.* at PageID 5609–10.) Respondent further notes that the *Dellinger* court granted equitable tolling based on post-conviction counsel's performance and denied partial summary judgment asserting that its prior finding that post-conviction counsel abandoned Dellinger is separate and district from whether post-conviction counsel was ineffective for failing to raise certain ineffective assistance of trial counsel claims. (*Id.* at PageID 5610.) *See Dellinger v. Mays*, No. 3:08-cv-104-TANDCP, 2018 WL 4102241, at *6-8 (E.D. Tenn. Aug. 28, 2018) (denying motion for partial summary judgment).

In reply, Chalmers asserts that Respondent makes an overly broad argument about judicial notice and fails to acknowledge that courts may only notice facts that are "not subject to reasonable dispute. (ECF No. 122 at PageID 5626.) More specifically, Chalmers asks this Court to take judicial notice of "the content of testimony, declarations, and other evidence submitted in another death penalty case in federal court detailing the various issues applicable to post-conviction counsel during the same relevant time period as their representation of Chalmers." (*Id.*) Chalmers agrees that it would be inappropriate for the Court to make a finding of ineffective assistance based solely on testimony in a different case. (*Id.*) However, Chalmers asserts that facts relevant to counsel's mental illness and the inner working of the post-conviction counsel's office are relevant to the Court's consideration of his claims and may aid in analysis of how those personal and professional issues impacted counsel's representation in his cases. (*Id.* at PageID 5626–27.) Chalmers argues that it is appropriate for the Court to take judicial notice and use its discretion "to determine the

appropriate weight or significance of these judicially-noticed documents" in conjunction with other evidence on the merits of Chalmers' petition. (*Id.* at PageID 5628.)

Federal Rule of Evidence 201 allows the Court to take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it is: (1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources who accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a) & (b). Judicial notice of a fact in a civil case, such as this one, is conclusive. *See United States v. Jones*, 580 F.2d 219, (6th Cir. 1978).

Chalmers asks the Court to take judicial notice of **unspecified** facts in documents consisting of more than 500 pages in *Dellinger*, a non-capital case filed in another court. The documents in question include: discovery motions (*see Dellinger*, No. 09-404, ECF Nos. 19 & 20) consisting mainly of argument (not facts); an order from another case (*see id.*, ECF No. 20-6); declarations (*see id.*, ECF Nos. 29-5, 29-17, and 37-1); transcripts (*see id.*, ECF Nos. 77 and 78); a magistrate judge's report and recommendation (*see id.*, ECF No. 83); and the memorandum and order adopting it (*see id.*, ECF No. 84). Although the same post-conviction counsel were involved in the instant case and *Dellinger* and the cases may share the same relevant time frame, the Court will not presume that *any* fact in the varied documents is indisputable and can appropriately be judicially noticed. Chalmers' request is simply too broad because he has not identified what adjudicative facts he seeks to be judicially noticed. The motion to take judicial notice is **DENIED**.

## VII.      Other Discovery

Chalmers argues that the COVID-19 pandemic has substantially limited his counsel's ability to fully investigate all relevant claims and issues for which discovery may be needed. (ECF No. 113 at PageID 5526.) Chalmers' present habeas counsel has represented him for a relatively brief time

and been limited in legal visits with Chalmers due to the pandemic.  (*Id.* at PageID 5526–27.)
Counsel asserts that he has been prevented from pursuing additional investigation that would allow
the accurate assessment of the merits and a determination of what additional discovery is needed.
(*Id.* at PageID 5527.)  Counsel requests that the Court grant leave, if necessary, to submit additional
requests for discovery when reasonable safety measures for the pandemic are in place.  (*Id.*)

Respondent argues that Chalmers' request for leave to conduct additional discovery should
be denied.  (ECF No. 121 at PageID 5611.)  He contends, pursuant to Fed. R. Civ. P. 16(b)(4), that a
discovery schedule should be modified only for good cause and with the judge's consent.  (*Id.*)
Further, Respondent argues that the pandemic should not be the sole reason for granting relief and
allowing one party a windfall.  (*Id.* at PageID 5612–13.)

Considerable discovery has been conducted in this matter.  In the Court's last scheduling
order, entered just before the pandemic in February 2020, the Court allowed ninety days for a
discovery motion and anticipated moving forward with final briefs and motions for an evidentiary
hearing in the case.  (*See* ECF No. 110.)  Many health and safety restrictions related to the COVID
19 pandemic have been lifted.  Chalmers has not indicated what, if any, additional discovery he may
seek.  For that reason, the Court will not give a blanket grant of leave to conduct additional
discovery.  As always, Chalmers will have to show good cause under Habeas Rule 6.  At this point
in litigation, Chalmers should also show that he has been diligent in making discovery requests,
considering that he has filed three discovery motions.  Further, as discovery has been completed in
this case, additional discovery need not be required.  (*See* ECF No. 110 at PageID 4280); *see Shinn*
*v. Martinez-Ramirez*, 142 S. Ct. 1718 (2022) ("We now hold that . . . a federal habeas court may not
conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based

on ineffective assistance of state postconviction counsel.")  For the foregoing reasons, Chalmers'

motion for leave to conduct discovery is **DENIED**.

      **IT IS SO ORDERED** this 28th day of July, 2022.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE